UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDRICKA L COOK,

       Petitioner,

v.                                                    Case No.  2:24-cv-596-SPC-KCD

SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS,

       Respondent.

_____/

## OPINION AND ORDER

Petitioner Edricka L. Cook, a prisoner in the custody of the Florida Department of Corrections, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1).  The Secretary of the Florida Department of Corrections ("Respondent") filed a response in opposition to the petition, and Cook filed a reply.  (Doc. 16; Doc. 19).

After carefully reviewing the pleadings and the entire record, the Court concludes that Cook is not entitled to federal habeas corpus relief on any of the grounds raised in her petition.  Further, because the Court was able to resolve each ground based on the record, an evidentiary hearing is not warranted. See *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## I.    Background and Procedural History

On June 2, 2015, Cook was charged by second amended information with: (1) trafficking in 400 grams or more of cocaine (count one); (2) trafficking in 14 grams or more of heroin (count two); and (3) possession of a place with knowledge of trafficking, sale, or manufacture of a controlled substance (count three).   (Doc. 16-2 at 16).   Cook was charged as a principal, pursuant to Florida Statute § 777.011.   (Id.)   A two-day jury trial commenced on June 26, 2015.   (Id. at 20).   After the defense rested its case, the trial court reduced Count One to the lesser-included offense of trafficking an amount of cocaine between 200 and 400 grams.   (Id. at 419).   The jury found Cook guilty on counts one and two, and not guilty on count three.   (Id. at 610–11).   The state court sentenced Cook to concurrent minimum mandatory terms of seven years' imprisonment on count one and fifteen years on count two.   (Id. at 636–42).   Florida's Second District Court of Appeal (DCA) affirmed Cook's convictions and sentences without a written opinion.   (Id. at 756); Cook v. State, 212 So.3d 364 (Fla. 2d DCA 2016).

Thereafter, Cook filed a motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure (Rule 3.850 Motion).   (Doc. 16-2 at 770–819).   After reviewing each claim, the postconviction court ordered an evidentiary hearing on grounds one, three, five, seven, and part of eight.   (Id. at 1759–1857).   It summarily denied the other claims.   (Id.)   After the

hearing, the Court denied the remaining claims. (*Id.* at 1942–51). Florida's Sixth DCA affirmed without a written opinion. (*Id.* at 2135).

Cook filed her counseled federal habeas petition in this Court on June 23, 2024. (Doc. 1).

## II.    Legal Standards

### A.    The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). In this context, clearly established federal law consists of the governing legal principles, and not the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White v. Woodall*, 572 U.S. 415, 420 (2014); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by

Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an unreasonable application of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (*quoting Williams*, 529 U.S. at 406).

The standard to obtain relief under 28 U.S.C. §2254(d) is both mandatory and difficult to meet. To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 572 U.S. at 420 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of

correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance. *Sellers*, 138 S. Ct. at 1196.

## B.    Ineffective Assistance of Counsel

The Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Id.* at 688. In reviewing counsel's performance, a court must adhere to the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Proving *Strickland* prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

## III.    Discussion

As noted, Cook faced three counts at trial. Counts one and two were drug trafficking charges and count three alleged that Cook possessed a home with knowledge that it was being used to further drug activity. To support the trafficking charges in counts one and two, the prosecution called law enforcement officers who testified that they had surveilled a single-family home at 6226 Demery Circle for almost a year. (Doc. 16-2 at 132–36). During that time, the police conducted nine controlled drug buys. (*Id.* at 133, 140). On September 9, 2013, law enforcement executed a search warrant on the home. (*Id.* at 140). Three men ran from the back door of the home. (*Id.* at

140–41, 208).   While securing the residence, two officers saw Cook inside a bedroom "kneeling . . . with both hands underneath the bed."   She did not show her hands immediately when ordered to do so.   (*Id.* at 225–26, 236–37, 242).   One officer saw Cook make a pushing motion before finally complying. (*Id.* at 232).[1]   Law enforcement detained Cook, the only remaining occupant, and removed her from the home.   (*Id.* at 145–46, 237).   A search of the room where Cook was found revealed a Walmart bag under the foot of the bed concealed by blankets.   (*Id.* at 238, 242–44).   The bag contained both cocaine and heroin.   (*Id.* at 158–62, 298–99, 301–18).

During closing argument, the prosecution acknowledged that there was no evidence that Cook ever sold drugs. Instead, the trafficking charge was based on her knowing possession of the Walmart bag containing the drugs. (Doc. 16-2 at 462–63).   The crux of Cook's defense was that she did not participate in any of the drug transactions that occurred in the house where she was arrested and that the state was actually investigating her boyfriend, Lorenzo Hood.   (*Id.* at 577–503.)   She argued that the state had offered no evidence showing that she knew about the Walmart bag, and she insisted that she had not attempted to hide it.   (*Id.*)

---

[1] Cook, who testified at trial, denied that she was kneeling with her hands underneath the bed when the police arrived.   (Doc. 16-2 at 402–03).

In this habeas petition, Cook raises eight claims of ineffective assistance of trial counsel Abizer Ghadiali (Counsel) and one claim of cumulative error. (Doc. 1 at 18–69).   Each claim was raised in Cook's Rule 3.850 Motion and denied by the postconviction court.   The Sixth DCA affirmed without a written opinion.   (Doc. 16-2 at 2135).   Accordingly, these claims appear to be exhausted, and this Court looks through the Sixth DCA's summary affirmance and, unless stated otherwise, presumes that the affirmance rested upon the specific reasons given by the post-conviction court.   *Sellers*, 138 S. Ct. at 1196.

## A.    Ground One

Cook asserts that Counsel was constitutionally ineffective because he did not file a motion to sever grounds one and two (the trafficking charges) from ground three (the house charge).   (Doc. 1 at 18).   She asserts that the state's evidence on ground three was weak and that "proceeding with the charges joined together increased the likelihood of otherwise inadmissible collateral crime/bad act/prejudicial evidence [being] admitted" to prove grounds one and two.   (*Id.* at 20).   Specifically, she argues that the jury was allowed to hear substantial evidence about multiple drug buys at the residence where she was arrested, law enforcement's surveillance of the residence, and Cook's involvement in a criminal enterprise.   (*Id.* at 23–24).   The jury also learned that law enforcement searched Cook's own home after her arrest and found 138 grams of cocaine and drug-manufacturing equipment.   (*Id.* at 24).   While

recognizing that the jury acquitted her on ground three, Cook argues that "[t]he evidence from [ground three] tipped the scales of guilt for the more serious trafficking offense."   (*Id.* at 28).

Cook raised this claim in her Rule 3.850 Motion.  The postconviction court first determined that the counts were not improperly joined, so "counsel would not have had grounds to argue for severance on that basis."   (Doc. 16-2 at 1764).   However, "out of an abundance of caution," the postconviction court ordered an evidentiary hearing on "whether counsel should have moved to sever the counts on the basis that properly joined counts could be severed if joinder results in undue prejudice[.]"   (*Id.*)   After the hearing, the postconviction court summarized Counsel's testimony as follows:

> At the hearing, Counsel testified that he had represented [Cook] and that he had filed a notice of appearance on April 28, 2015.   An amended information was filed on June 2, 2015, which added Count 3.   Counsel stated that at the time that he took over [Cook's] case, it had been pending for years and was in a trial posture.   He testified that all the depositions had been done and that he believed that the only thing that had not yet been incorporated had been bringing Lorenzo Hood in as a witness; Counsel had added him as a witness.   He further stated that after he had looked at the evidence presented through discovery and the facts, he had thought the State's case against [Cook] was weak; especially the portion which charged her with possession of a place. He opined that the jury apparently shared his opinion when it acquitted her of that count.   The theory of defense, therefore, was that the State had insufficient evidence to establish that [Cook] knew what was in the

9

bag and likewise had insufficient evidence to demonstrate that she exercised any control over the house.

Counsel was asked why he had not filed a motion to sever, to which he responded that he at first had tried to file a motion to continue in order to better research the issue, but that he had ultimately decided that the joinder of the third charge fell in line with the theory of defense that the State lacked evidence to substantiate the charges. He also stated that he believed the offenses to have been properly joined as a matter of law.

Counsel agreed on cross-examination by the State that the evidence concerning the offense of possession of a place was very weak, in that it showed that [Cook] was never present at any of the controlled buys, that no investigative intelligence indicated that she was present at any criminal transaction, and that the focus of the investigation had been on the male occupants of the house.

(*Id.* at 1943–44 (minor alterations for clarity)). The postconviction court, "[h]avng had the benefit of the testimony at the hearing, of the case law and argument provided by the parties, and of observing the demeanor of the witnesses," found Counsel credible and determined that he had made a reasonable strategic decision not to sever the offenses. (*Id.* at 1945). The postconviction court further found that Cook had not shown *Strickland* prejudice from the decision, and that any "suggestion that [Cook] was found guilty on the other two charges as a result of the evidence relating to the third charge is speculation" (*Id.* at 1946).

In her Rule 3.850 Motion (and in this petition), Cook relied on *Dawson v. State*, 275 So.3d 257 (Fla 4th DCA 2019) to support an argument that the mere *implication* that a defendant was previously engaged in illegal activity supports a reversal. (Doc. 16-2 at 2020; Doc. 1 at 6).[2] The postconviction court distinguished *Dawson* because: (1) the defendant in *Dawson* "was the target of the investigation in that case whereas the evidentiary hearing testimony in the instant case established that [Cook] was not"; (2) unlike

---

[2] The postconviction court summarized *Dawson* as follows:

> In *Dawson*, the appellate court found merit in the defendant's "argument that the references to collateral crimes evidence deprived him of a fair trial . . ." 275 So. 3d at 258. The defendant in *Dawson* was charged with "one count of trafficking in oxycodone . . . and one count of possession of cocaine." *Id.* The charges stemmed from an apparent drug transaction that took place in Defendant's vehicle. *Id.* at 258-59. The defendant "denied having any knowledge" of the items found inside the vehicle. *Id.* at 259. Additionally, both he and the putative drug buyer denied law enforcement's version of events that at the time officers converged on the vehicle, the defendant had a pill bottle on his lap. *Id.* "At trial, the prosecutor and three of the State's witnesses referred to the fact that Defendant's house was under surveillance, that a search warrant related to narcotics had been issued, and that Defendant was the target." *Id.* During jury deliberations, the jury submitted a written question, asking about the search warrant. *Id.* The defendant was thereafter found guilty as charged. *Id.* The Dawson court determined that "the multiple references to the search warrant clearly had an impact on the jury as evidenced by the question posed during deliberations." *Id.* at 260.

(Doc. 16-2 at 1945).

*Dawson*, there was no question from the jury reflecting that testimony from the third charge unduly impacted them; and (3) "the jury demonstrated its ability to differentiate between the evidence relevant to each charge" because it had acquitted Cook on count three.   (*Id.* at 1946).

Cook argues that the postconviction court unreasonably applied *Strickland* because the jury heard significant collateral crime evidence due to the charge in count three.   (Doc. 1 at 27).   She argues that the "direct evidence" of significant collateral crime evidence (combined with her prior arrest for cocaine and the drugs found incident to arrest in this case) "tipped the scales of guilt for the more serious trafficking offense."   (*Id.* at 28). Notwithstanding that the state court distinguished the facts in *Dawson* from those in this case, Cook reiterates her argument that *Dawson* supports her claim of ineffective assistance.   (*Id.*)   In other words, Cook now argues that the state court misapplied or misunderstood *Dawson* when it denied this claim. But it is well settled that "it is not a federal court's role to examine the propriety of a state court's determination of state law."   *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1299 (11th Cir. 2017); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.").   Moreover, even if Counsel's failure to move for severance demonstrated deficient performance —a finding not made by this Court—the

postconviction court also found that the jury's ability to rationally sift through all the evidence offered at trial and acquit Cook of count three supports the state courts' conclusion that Cook did not suffer prejudice from the joinder. And, while Cook argues that the jury "clearly could not have [disregarded the evidence on count three] as to the big picture of the entire case" (Doc. 19 at 2), she does not support the argument, and the trial court specifically instructed the jury as follows:

> A separate crime is charged in each count in the information, and although they have been tried together, each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each.

> A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crimes charged.

(Doc. 16-2 at 552–53).  "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Cook offers nothing but speculation to support her allegation that the jury ignored the trial court's instructions and convicted her based on evidence not offered to prove counts one and two. "Post-conviction relief cannot be based on speculation or possibility." *Maharaj v. State*, 778 So. 2d 944, 951 (Fla. 2000); *see also Kablitz v. State*, 979 So. 2d 969, 972 (Fla 4th DCA 2008) (finding harmless error for improper joinder of counts because the joinder "did not affect the jury's ability to differentiate between the various crimes"); *Vinas v. State*, 299 So.3d 456, 460

(Fla. 3d DCA 2020) (finding that "the jury demonstrated its ability to differentiate between various [allegedly improperly joined charges], as Vinas was acquitted of counts five and six"); *United States v. Kabbaby,* 672 F.2d 857, 862 (11th Cir. 1982) ("Since defendant was acquitted of five of the six counts charged. . . it is clear the jury 'meticulously sifted the evidence' and that appellant was not prejudiced by a spillover of evidence relating to other counts or defendants."). In short, the postconviction court's rejection of ground one on *Strickland*'s prejudice prong was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 102. Because Cook has satisfied neither of *Strickland*'s prongs, she is not entitled to federal habeas corpus relief on Ground One.

## B.    Ground Two

Cook argues that Counsel was ineffective for failing to argue to the jury that there was no evidence showing that she knew there were two different types of drugs in the Walmart bag. (Doc. 1 at 29). She asserts that "Counsel was obligated to argue there was no evidence the petitioner had knowledge that the bag contained two different drugs based upon the facts and circumstances of this case." (*Id.* at 30). She asserts that the evidence at trial suggested that she knew her boyfriend, Lorenzo Hood, sold cocaine, but no evidence was presented suggesting that she knew there was heroin in the bag.

(*Id.* at 31).    Cook raised this claim in her Rule 3.850 Motion, and the postconviction court summarily denied it.    (Doc. 16-2 at 1764–66).    The court explained that under Florida law, " 'the possession of a controlled substance, whether actual or constructive, shall give rise to a permissive presumption that the possessor knew of the illicit nature of the substance.' "    (Doc 16-2 at 1765 (quoting *Maestas v. State*, 76 So.3d 991, 955 (Fla 4th DCA 2011))).    After summarizing the evidence presented at trial showing that Cook possessed the Walmart bag, the postconviction court concluded that it (the evidence) was sufficient to show Cook's "knowledge of the presence of the drugs under the bed" and "to support the permissive presumption that [Cook] knew of the illicit nature of the contents of the bag."    (Doc. 16-2 at 1766).    Accordingly, there was no need for the State to prove that the bag contained two substances, and no need for Counsel to object to their failure to do so.    (*Id.*)    The Sixth DCA affirmed without a written opinion.    (*Id.* at 2135).

Cook concedes that the state was entitled to rely upon the statutory presumption but argues that Counsel should have raised the only defense available "if the jury believed that the officer(s) saw Cook trying to hide the opaque bag."    (Doc. 19 at 3).    To the extent Cook now argues that the postconviction court misinterpreted Florida law when it determined that the State did not have to prove the presence of two substances in the bag, this Court will not second guess the state court on an issue of state law.    *See*

15

*Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).   And if the state did <u>not</u> need to specifically prove that Cook knew the Walmart bag contained both cocaine and heroin (as opposed to merely illicit substances), Cook only speculates that the trial court would have allowed Counsel to make the proffered argument, which would have had little or no chance at success. *See* Fla. Stat. § 893.135(2) (A person acts knowingly . . . if that person . . . actually or constructively possess[es] any of the controlled substances listed in subsection (1), regardless of **which** controlled substance listed in subsection (1) is in fact . . . actually or constructively possessed)(emphasis added).

Counsel cannot be deemed ineffective for failing to raise an argument that has little chance of success.   *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994)("[I]t is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance" of counsel); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992)(failure to raise meritless issues cannot prejudice a client).   Accordingly, the state court's rejection of ground two was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts, and Cook is not entitled to federal habeas relief on Ground Two.

## C.    Ground Three

Cook asserts that Counsel was constitutionally ineffective for failing to object to the admission of a video showing the police reading her a search warrant while she sat in a chair with her hands restrained behind her back. (Doc. 1 at 33–34).   Cook argues that it was prejudicial to allow the jury to view her while she was restrained, "sitting on a chair and being informed of the allegations contained in the search warrant." (*Id.* at 34).   Cook further argues that the prejudicial effect of the video was exacerbated when the jury watched an officer read her *Miranda* warnings while she (Cook) was restrained in a chair. (*Id.*)

Cook raised this claim in her Rule 3.850 Motion, and the postconviction court denied it after holding an evidentiary hearing.   At the hearing, Counsel testified that "the strategy for the video, if it came in, was to show the jury, even if they saw it, that yes, Ms. Cook is there, she's frustrated, she's angry, she's upset, but because she did nothing wrong, and that this is all that they had." (Doc. 16-2 at 1891).   Counsel did not believe that he had grounds to exclude the video, since Cook's demeanor after her arrest had become an issue, but he, nevertheless, wanted to show "that she was being – they were just – it was like harassing her.   They were harassing her, and they were doing this to her when they had no evidence for any of it." (*Id.* at 1902).   Counsel also testified that he had questioned the detective who made the application for the

search warrant and the detective admitted that the affidavit did not mention Cook.  (*Id*.)  The postconviction court summarized Counsel's testimony and concluded:

> Having the benefit of the testimony at the hearing, of the authority and argument provided by the parties, and of observing the demeanor of the witnesses, this Court finds Counsel credible in that Counsel made a strategic decision not to object and the decision was reasonable.  Further this Court finds that as the demeanor of the [Cook] at the time of her arrest became an issue at trial, the state would have been entitled to show the video to the jury to rebut defense testimony and that Counsel therefore would not have had a basis upon which to object.  [Cook] has failed to demonstrate any entitlement to relief.

(*Id*. at 1946–47).  The Sixth DCA affirmed without a written opinion.  (*Id*. at 2135).

Cook has not shown that the state courts' rejection of this claim on both *Strickland* prongs entitles her to federal habeas corpus relief.  First, whether an attorney's decision is strategic or tactical is a question of fact, which this Court must presume to be correct.  *See* 28 U.S.C. § 2254(e)(1); *Debruce v. Commissioner, Ala. Dep't of Corr.*, 758 F.3d 1263 (11th Cir. 2014).  And the Court need not determine whether Counsel's strategic decision (not to object to admission of the video) was reasonable because the state court specifically said that the prosecution was entitled to show the video to rebut defense testimony.[3]

---

[3] The defense had argued that Cook was panicked and terrified when the police

Therefore, even if Counsel had requested the exclusion of the search warrant video, it would have been admitted.   *See Herring*, 397 F.3d at 1354-55 ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done [.] ").

In sum, since the state court concluded that the video was properly admitted—a state law issue that this Court will not reconsider—Cook has not established *Strickland* prejudice.   Accordingly, she is not entitled to federal habeas relief on Ground Three.

### D.    Ground Four

Cook asserts that Counsel was ineffective for failing to ask for a jury instruction regarding temporary or momentary possession.   (Doc. 1 at 42). She asserts that the evidence showed she had only momentary possession of the drugs in the Walmart bag, and if Counsel had requested a jury instruction to that effect, she would not have been convicted.   (*Id.*)   Cook bases this claim in part on *Ford v. State*, 69 So.3d 391 (Fla. 2d DCA 2011).   (*Id.* at 44–45).[4]

_____

arrived, believing that she was being robbed.   (Doc. 16-2 at 400–01).   The Court has watched the entire video twice and notes that Petitioner was calm and respectful throughout.

[4] In *Ford*, the Second DCA found that Ford, who was sitting in the back seat of a car, did not have possession or control of two bags of marijuana that were tossed to him by the car's driver.   The court stated that "[d]espite Mr. Ford's admission that the driver tossed the marijuana to him to hide, this momentary possession did not establish [his] dominion and control over the contraband."   69 So.3d at 393.

In a considered four-page order, the postconviction court denied this claim.  (Doc. 16-2 at 1766–69).   The court first explained that " 'for one to be in actual or constructive possession of contraband, the contraband must have come under his dominion or control.' "   (*Id.* at 1767 (quoting *Campbell v. State*, 577 So. 2d 932, 935 (Fla. 1991)*)*).   The postconviction court next determined that a trial court has wide discretion to give or withhold special instructions and that, in criminal trials, " 'the standard jury instructions are presumed correct and are preferred over special instructions.' " (Doc. 16-2 at 1767 (quoting *Wolf v. State*, 117 So. 3d 1203, 1207 (Fla. 3d DCA 2013)*)*).   The court recognized that Counsel's " 'failure to object to standard jury instructions that have not been invalidated by [the Florida Supreme Court] does not render counsel's performance deficient.' " (Doc. 16-2 at 1767 (quoting *Rodriguez v. State*, 919 So. 2d 1252, 1272 (Fla. 2005)*)*).   Finally, the postconviction court determined that Cook was not entitled to relief because the caselaw she relied upon to support her argument did not apply to the facts of <u>her</u> case:

> In the instant case, the record reflects that Mr. Hood and [Cook] both testified that [Cook]was unaware of the drugs in the bag.  However, neither [Cook] nor Mr. Hood testified to [Cook] having possessed the drugs, even temporarily.
>
> The case law cited above addresses the issue of temporary possession within the context of actual possession; however, the testimony of Mr. Hood and [Cook] did not furnish evidence to support a jury instruction on temporary possession as neither

> testified to [Cook] having actually possessed the drugs.
> This is not a case where the defendant was passing
> controlled substances from one person to another or
> was attempting to purchase narcotics but was
> prevented by an arrest.    Consequently, it would
> appear that the evidence offered at trial would not
> have supported a theory that [Cook] was in temporary
> possession of the controlled substances.    In turn, it
> appears that counsel would not have had a basis upon
> which to request the instruction.   [Cook] has failed to
> demonstrate any entitlement to relief.

(Doc. 16-2 at 1768–69 (citations to the record omitted)).    In other words, the

postconviction court considered and applied the precise caselaw that Cook now

relies upon to support Ground Four and determined that it did not support a

special instruction on temporary or momentary possession.    State law controls

the applicability of jury instructions.    *See Brown v. Warden*, 562 F. App'x 779,

781 (11th Cir. 2014) ("Whether defense counsel erred by not requesting a

specific jury instruction depends on the state law that governed the defendant's

trial[.]")   To the extent Cook now argues that the state court misinterpreted

or misapplied state law when it denied this claim, state courts are the final

arbiters of state law.    *See* discussion *supra* Ground Two.

Moreover, under Florida law, a defendant is entitled to a special jury

instruction only when:   (1) the instruction is supported by the evidence; (2) the

standard instruction does not adequately cover the theory of defense; and (3)

the instruction is a correct statement of the law and not misleading or

confusing.    *Peterson v. State*, 24 So. 3d 686, 689 (Fla. 2d DCA 2009).    As noted

by the postconviction court and argued by Respondent, Cook's theory of defense was that she neither actually nor knowingly possessed the drugs found inside the shopping bag.   (Doc. 16-2 at 1768; Doc. 16 at 46).   In fact, Cook testified that she was unaware of the Walmart bag's existence.   (Id. at 390–91, 402, 403).   In closing, Counsel argued:

> But there's no fingerprints on [the Walmart] bag. Why?   Because she never touched the bag.   She never moved the bag.   **She didn't even know that the bag was there.   She didn't know the bag was there**.

(Id. at 496 (emphasis added)).   In other words, Cook argued that the state failed to prove that she was even aware of the bag's presence, much less the substances in the Walmart bag.   And the standard jury instruction covered that theory of defense.[5]   Accordingly, Counsel was not deficient for failing to request the special instruction, and Cook suffered no prejudice from his failure to do so because (as stated by the postconviction court) the request would have been denied.   Cook is not entitled to federal habeas relief on Ground Four.

### E.    Ground Five

Cook asserts that Counsel was ineffective in calling Lorenzo Hood as a defense witness.   (Doc. 1 at 45–46).   Specifically, she states that Counsel did

---

[5] The standard instructions stated that the state must prove that Petitioner "knowingly possessed" the illegal substance and was "aware of the presence of the substance."   (Doc. 16-2 at 573–74).

not advise her that the jury could learn of her 2009 arrest for drug trafficking if Mr. Hood testified. (*Id.*) She asserts that Counsel's "botched questioning of the witness was a disaster that opened the door to highly prejudicial collateral crime evidence." (*Id.* at 46). Cook raised a similar claim in her Rule 3.850 Motion, and the postconviction court held an evidentiary hearing. (Doc. 16-2 at 1947–49). After summarizing Counsel's hearing testimony, the postconviction court denied Ground Five as follows:

> Having had the benefit of the testimony at the hearing, of the authority and argument provided by the parties, and of observing the demeanor of the witnesses, this Court finds [C]ounsel credible in that he had discussed the strategy with [Cook], who had agreed with it; that the strategy was reasonable; and that Mr. Hood had testified as expected, further establishing and corroborating [Cook]'s version of events. The court also finds that while [Counsel] agreed at the hearing, when asked by postconviction counsel, that his questions may have been broad, he also testified that he had disagreed with the trial court's finding at the time that he had opened the door. [Cook] has failed to demonstrate any entitlement to relief.

(*Id.* at 1948–49). The Sixth DCA affirmed without a written opinion. (Doc. 16-2 at 2135).

Cook argues that the postconviction court should not have given weight to Counsel's subjective belief that he did not open the door to the collateral crimes evidence and that his questions were *per se* ineffective assistance. (Doc. 1 at 46–47). Upon review, the Court finds that the postconviction court's

resolution of this claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 572 U.S. at 420.

The defense called Lorenzo Hood, Cook's boyfriend, as a defense witness. (Doc. 16-2 at 352). Mr. Hood testified that he sold drugs from the home on Demery Circle (where Cook was arrested). (*Id.* at 354). He testified that Cook never assisted him in selling or buying drugs. (*Id.* at 354–55). He testified that the Walmart bag belonged to him and that he had placed it under the covers. (*Id.* at 358). He said that Cook did not know it was there. (*Id.* at 359). Mr. Hood was charged and convicted for the drugs in the Walmart bag. (*Id.* at 362–63). Mr. Hood was aware that the testimony he offered in defense of Cook could be used against him at sentencing or on appeal, but still wanted to testify. (*Id.* at 363). Counsel questioned that decision:

> Q.    Why [do you want to testify for Cook]?
>
> A.    Because she had nothing to do with nothing.
>
> Q.    They were not her drugs?
>
> A.    No.
>
> Q.    She did not know they were there?
>
> A.    No.
>
> Q.    And you have never or none of your associates that you know of have used or held or used her assistance in any narcotics transactions?
>
> A.    No.

(*Id.* at 364).   On cross examination, the state questioned whether Cook was aware that he (Mr. Hood) had sold drugs since 2008.   (*Id.* at 365).   Mr. Hood responded "no."   (*Id.*)   The state then asked to approach the bench, and the following discussion was held:

| | |
|---|---|
| STATE. | In May of 2009, both Mr. Hood and the defendant were arrested and a search warrant was issued on a house they lived in together and found a large amount of cocaine in a shared dresser in their shared bedroom.   I believe I can bring that up now for impeachment purposes. |
| COUNSEL. | I don't believe so at all Judge.   That case was nolle prossed. There was no indication that she had any knowledge of those drugs in that case.   There was no evidence that those were her drugs or anything like that.     That was a circumstantial case.   That's why it was dropped. |
| STATE. | He just said she's never seen his drugs, and they were in her dresser in her bedroom. |
| COUNSEL. | You're asking very broad questions.   I mean, if you want to ask him has she ever seen drugs with him.   What are you asking him?   The bringing up of a prior case which was null prossed, that doesn't mean that she knew that those drugs were there.   That's irrelevant to this. You can cross-examine him. |
| STATE. | He just lied, and we have to prove her knowledge. |

> COURT.    Here's the thing.    He said he had – she
> had no knowledge of his drugs, and if it's
> from a prior case where they were in
> their bedroom, it's one of theirs, and she
> got arrested, so she has got to be aware
> he has drugs.    Overruled.

(*Id.* at 366–67).    The prosecutor then questioned Mr. Hood about the 2009
arrest, and he (Mr. Hood) denied that it had happened, explaining that "[t]hey
charged her with cocaine, but it was no cocaine there." (*Id.* at 368–69).    He
reiterated that Cook had never seen his drugs.    (*Id.* at 369).

Defense counsel's choice of which witnesses to call is a strategic decision.
*Waters v. Thomas*, 46 F.3d 1506, 1512 (1th Cir. 1995) ("Which witnesses, if any,
to call, and when to call them, is the epitome of a strategic decision, and it is
one that we will seldom, if ever, second guess.").    At the evidentiary hearing
on Cook's Rule 3.85 Motion, Counsel testified that he called Mr. Hood to testify
because he "wanted to give the jury a full story, a package of what – what
happened.    [The bag of drugs is] not hers.    Whose is it?    And so he completed
that story." (Doc. 16-2 at 1903).    And even though Hood was a convicted
felon, there were no non-felon witnesses willing to corroborate Cook's version
of events.    (*Id.* at 1903).    Counsel thought Hood would testify truthfully at
trial.    (*Id.* at 1906).[6]    And indeed, Hood's testimony <u>did</u> corroborate Cook's

---

[6] Counsel also maintained that Petitioner's answer to the <u>State</u>'s question did
not open the door to testimony regarding the 2009 arrest, and that the trial court
erred by allowing it.    (Doc. 16-2 at 1905).

version of events.   He admitted that he was the one who had placed the Walmart bag on the bed, said that he had let Cook into the room, and testified that the women's clothing in the room did not belong to Cook.   (*Id.*)   While Cook now argues that Counsel's questions to Hood were too "broad," it was Hood's false response to one of the State's questions—not Counsel's "broad" questions—that opened the door to his impeachment.   Given that Hood was the only witness who could testify about Cook's lack of knowledge regarding the drugs in the Walmart bag, Counsel made a reasonable strategic decision to call him as a witness.   Accordingly, Cook fails to show that the state court's rejection of this claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination.   Cook is not entitled to federal habeas relief on Ground Five.

### F.     Ground Six

Cook alleges that Counsel should have objected when, on cross examination, the prosecutor asked her whether Lorenzo Hood and law enforcement officers Bernice and Millard had lied when they testified.   (Doc. 1 at 52–53).   Cook raised this claim in her Rule 3.850 Motion, and the postconviction court denied it on *Strickland*'s performance prong without an evidentiary hearing.   (Doc. 16-2 at 1769–71).   The court summarized and denied the claim as follows:

"It is elemental in our system of jurisprudence that the jury is the sole arbiter of the credibility of witnesses." *Boatwright v. State*, 452 So. 2d 666,668 (Fla. 4th DCA 1984). "Lying is the making of a false statement with intent to deceive. Absent some evidence showing that the witness is privy to the thought processes of the other, the first witness is not competent to pass on the other's state of mind." *Id. See also Knowles v. State*, 632 So. 2d 62, 65-66 (Fla. 1993) ("[A]llowing one witness to offer a personal view on the credibility of a fellow witness is an invasion of the province of the jury to determine a witness's credibility."). However, "[a]sking whether another witness is 'wrong,' 'not accurate,' or 'mistaken' is very different from asking whether the witness is a liar." *Joseph v. State*, 868 So. 2d 5, 8 (Fla. 4th DCA [2004]).

The first passage from the transcript [Cook] cites as support occurs during [Cook's] trial testimony, when she is asked about Lorenzo Hood and is reprinted herein:

> Q: Just a few months, well, okay. So is that when you learned that he was involved in dealing drugs?
>
> A: That's when I had the idea, yeah.
>
> Q: Okay. And I mean, did you ever confront him about that, ask him about it?
>
> A: No.
>
> Q: No. But you said that you told him to make sure that he didn't involve you; correct?
>
> A: Right. . . .
>
> Q: Okay. So earlier when Mr. Hood testified that you had no idea that he was a drug dealer, he was lying?

A: Well, to his knowledge, I may have not had any idea. To his knowledge. But what I thought on my own terms is what I thought on my own terms.

Q: But you just said that you told him, "Leave me out of your drug dealing;" right?

A: I didn't want anything around me, yeah.

Q: And you told him that ... So he knew that you knew about his drug dealing?

A: I guess so.

Q: So he lied on the stand here earlier today?

At this point, defense counsel objected, and was overruled by the court. To the extent that [Cook] argues [Counsel] should have continued to object, given this ruling, counsel cannot be deemed ineffective for failing to make further objections.

The second passage she cites occurs during her testimony when she was asked about the police and is reprinted herein:

Q: Okay. So you heard the officers testify that you were actually on your knees facing the bed; right?

A: Yes.

Q: So you're saying that they're not telling the truth?

A: Right.

Q: Okay. And you heard them say that you actually had your arms underneath the bed; right?

A: Yes.

> Q: And you're saying that they're not telling the
> truth?
>
> A: Right.
>
> Again, as counsel had already once objected to this
> type of questioning and had been overruled, counsel
> cannot be deemed ineffective for failing to make
> further objections. Notably, when the State asked
> [Cook] if the "police are thieves as well," which is a
> different characterization than that of liars, defense
> counsel objected, and the objection was sustained.
> [Cook] has failed to demonstrate any entitlement to
> relief.

(*Id.* at 1769–71 (citations to the record omitted)). The Sixth DCA affirmed

without a written opinion. (Doc. 16-2 at 2135).

Cook now argues that the trial court erred in overruling Counsel's

objection to the question of whether Hood had lied because Counsel had not

stated the grounds on which his original objection was based, and "the

[postconviction] court was required to determine whether the trial court was

required to sustain the objection." (Doc. 1 at 54). Cook posits that the trial

court may have been "unfamiliar with the caselaw that prohibits this type of

testimony" when overruling Counsel's objection. (*Id.* at 56).[7] In other words,

Cook argues that the trial court (by overruling Counsel's unelaborated-upon

objection), the postconviction court (by denying this claim without a specific

---

[7] Notably, although the alleged error was preserved, Petitioner did not argue
this point on direct appeal. To the extent Petitioner now argues that she is entitled
to federal habeas corpus relief due to trial court error, the claim is unexhausted and
will not be further discussed.

finding on whether the trial court correctly overruled the objection), and the appellate court (by affirming the postconviction court's rejection of this claim) misinterpreted or misapplied state evidentiary law.    But, as discussed *supra*, this Court will not second-guess the state courts' conclusions on matters of state law.    And because this Court must assume that the state courts correctly applied state law, it must find that their conclusion that Counsel's performance was not deficient for failing to further object (or better explain his objection) was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."    *White*, 572 U.S. at 420.

Further, even if Counsel's performance was deficient—a finding not made by this Court—this claim would not satisfy *Strickland*'s prejudice prong. While Cook argues that she was forced to either admit culpability or "brand the two law enforcement officers" as liars, she does not explain how the prosecutor's question regarding whether the officers were telling the truth contributed to her guilty verdict.    It was already clear from other evidence presented at trial that Cook's version of events conflicted with that of the officers.    And the jury instructions on witness testimony informed the jurors that it was <u>their</u> duty (not Cook's) to determine credibility:

> It is up to you to decide what evidence is reliable.    You should use your common sense in deciding which is the best evidence, and which evidence should not be relied

upon in considering your verdict. You may find some of the evidence not reliable, or less reliable than other evidence. You should consider how the witnesses acted, as well as what they said.

. . .

The fact that a witness is employed in law enforcement does not mean that his or her testimony deserves more or less consideration than that of any other witness.

. . .

The defendant in this case has become a witness. You should apply the same rules to consideration of his or her testimony that you apply to the testimony of the other witnesses.

. . .

You may rely upon your own conclusion about the credibility of any witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.

(Doc. 16-2 at 543–46). Cook offers nothing to overcome the presumption that jurors follow their instructions and reach their own conclusion on the credibility of witnesses. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Accordingly, Ground Six fails to satisfy either *Strickland* prong, and Cook is not entitled to federal habeas corpus relief on this claim.

## G. Ground Seven

Cook asserts that Counsel was ineffective for failing to seek limiting jury instructions because "the petitioner's trial was saturated with highly prejudicial evidence[.]" (Doc. 1 at 58). Specifically, Cook appears to complain about the state's evidence presented to support count three of the second

amended information (for which Cook was acquitted), Mr. Hood's testimony regarding has own criminal activity (and Cook's involvement in it), and Mr. Hood's testimony that Cook "was also arrested in 2009 for the *identical* trafficking in cocaine offense." (*Id.* at 60–61 (emphasis in original)). Cook raised this claim in his Rule 3.850 Motion. After holding an evidentiary hearing, the postconviction court specifically determined that Cook was not entitled to the instruction as it related to evidence presented to support count three, and further denied the ground as follows:

> Having had the benefit of the testimony at the hearing, of the authority and argument provided by the parties, and of observing the demeanor of the witnesses, this Court finds that to the extent that [Cook] argues that a limiting instruction should have been requested, it appears that as most of the evidence complained of by counsel related to the third offense, which was charged, the instruction would not have applied and the request therefore would not have been granted. To the extent that [Cook] argues that a limiting instruction should have been requested after Mr. Hood testified about the 2009 arrest, this Court finds that [Cook] is unable to demonstrate prejudice as the jury demonstrated its ability to disregard extraneous testimony when it differentiated between the evidence relevant to each charge, and acquitted [Cook] of the third charge. Given this demonstrated ability on the part of the jury, any suggestion that [Cook] was found guilty on the other two charges as a result of testimony about the 2009 arrest is speculation. [Cook] has failed to demonstrate any entitlement to relief.

(*Id.* at 1950).    The Sixth DCA affirmed without a written opinion.    (*Id.* at 2135).

Cook argues that the state courts unreasonably denied this claim because "it would be impossible for the jury to differentiate which evidence was for each count without any [limiting] instruction."    (Doc. 1 at 60).    Cook further argues that, had Counsel requested it, "a limiting instruction would have been given as required by law[,]" and that "[a]ny reasonable attorney would have requested that the court give some sort of instruction informing the jury that these prejudicial matters could not be considered in order to show that petitioner had the propensity to commit any of the crimes that she was charged."    (*Id.* at 62).

As discussed *supra*, this Court will not second guess the state courts' determination that a limiting instruction would not have been given—even if requested—on the evidence presented to support count three.    Therefore, the only collateral crimes "evidence" for which Counsel could have requested the instruction is the evidence (brought in through Lorenzo Hood's testimony) that Cook was arrested in 2009 for a similar crime.    However, the Court specifically told the jury (at Counsel's request) that, "[f]or the record, the charges in 2009 were dropped.    They were not pursued."    (Doc. 16-2 at 512).    In other words, the jury knew that Cook was not convicted of any criminal activity regarding

the 2009 arrest.[8]   Cook does not present any evidence to demonstrate that,
but for Counsel's failure to request another limiting instruction on this
statement, she would not have been found guilty on the drug charges.   As
noted, the jury was clearly able to differentiate between the charges and
applicable evidence when it acquitted Cook of count three.   Accordingly, any
claim of prejudice is entirely speculative.   Cook has not met her burden of
showing that the state courts' rejection of this claim was contrary to or based
upon an unreasonable application of *Strickland* or that it was based upon an
unreasonable determination of the facts.   Ground Seven is denied.

---

[8] The postconviction court denied this portion of the claim on *Strickland*'s
prejudice prong without making an explicit finding on the performance prong, and
the Sixth DCA affirmed without a written opinion.   However, in its answer to
Petitioner's appeal of the postconviction court's ruling, the state argued that
Petitioner could establish neither deficient performance nor prejudice on this ground.
(Doc. 16-2 at 2082).   Indeed, given that the trial court clarified to the jury that no
charges were pursued against Petitioner on the 2009 arrest, reasonable competent
counsel could certainly have decided against drawing further attention to activity
leading to charges that were never pursued.   *See*, *e.g.*, *Ferguson v. Knight*, 809 F.2d
1239, 1243 (6th Cir. 1987) (limiting instructions "inevitably invite the jury's attention
to matters the defendant normally prefers not to emphasize"); *Ashe v. Jones*, 208 F.3d
212 (6th Cir. 2000) (noting that counsel may have decided, as part of a reasonable
trial strategy, not to request an instruction limiting the jury's consideration of the
prior bad acts evidence based on the belief that such an instruction would bring undue
attention to the other acts); *Claivoyant v. Inch*, No. 16-80696-CV-MARRA, 2019 WL
13490315, at *15 (S.D. Fla. Nov. 6, 2019) ("Since a reasonable attorney might have
avoided reinforcing the fact of prior convictions Petitioner cannot establish that
counsel's performance was deficient.").

### H.    Ground Eight

Cook asserts that Counsel was constitutionally ineffective for not objecting and moving for a mistrial after four comments made by the prosecutor during closing argument.    (Doc. 1 at 63).    Each comment will be addressed in turn.

#### 1.    Eight(a)

Cook first argues that Counsel should have objected to the state's rebuttal closing comments, made soon after the trial court advised the jury that the 2009 charges against Cook had been dropped.    (Doc. 16-2 at 512). The prosecutor argued:

> I submit to you that after that point in time [2009], just like she told you, "I told him, leave me out of this. I don't want to have anything to do with that."
>
> So she had a conversation with Lorenzo about his drug dealing.    She told you, she knew he was a drug dealer.
>
> Talk about a conflict in evidence.    She knew exactly what was going on around her every day.    She wants to sit here and claim, oh, I'm innocent because I never actually sold a drug.    I never actually collected any money.    Well, she's not charged with that.
>
> This is a woman, ladies and gentlemen, as you heard, who was employed as a bail bondsman, a person who we trust to act as a law enforcement officer and ensure that accused criminals appear for their court dates. Yet she is living in a house where there is, as Ms. Russel said, a convenience store for drug dealers, 24/7, all hours of the night.

(Doc. 1 at 64, citing Doc. 16-2 at 512–13).    Cook argues that the only purpose

of the argument "was to highlight that she violated the community's trust—

including the trust of the prosecutor 'we.' " (Doc. 1 at 64).

Petitioner raised this claim in her Rule 3.850 Motion, and the

postconviction court summarily denied this claim, summarizing and

explaining the state rules for closing argument as follows:

> Improper prosecutorial comments merit a new trial
> when
>
>> the comments . . . either deprive the defendant
>> of a fair trial and impartial trial, materially
>> contribute to the conviction, [are] so harmful or
>> fundamentally tainted as to require a new trial,
>> or [are] so inflammatory that they might have
>> influenced the jury to reach a more severe
>> verdict than it would have otherwise.
>
> *Spencer v. State*, 645 So. 2d 377, 383 (Fla. 1994).
>
> A prosecutor may point out inferences during closing
> arguments that can be reasonably drawn from the
> evidence presented at trial.    *Jones v. State*, 949 So. 2d
> 1021, 1032 (Fla. 2006); *Griffin v. State*, 866 So. 2d 1,
> 16 (Fla. 2003); and *Bertolotti v. State*, 476 So. 2d 130,
> 134 (Fla. 1985).    Likewise, a prosecutor may "state
> his or her contention relative to what conclusions may
> be drawn from the evidence."    *Evans v. State*, 838 So.
> 2d 1090, 1094 (Fla. 2002) (internal cite omitted).
> Moreover, when a prosecutor's comment is in direct
> rebuttal to defense counsel's argument, it falls within
> the "invited response" exception to the fairly
> susceptible test and is not improper.    *Bell v. State*,
> 108 So. 3d 639, 649 (Fla. 2013).    *See also Jackson v.
> State*, 89 So. 3d 1011, 1019 (Fla. 4th DCA 2012)
> (finding that prosecutor was not impermissibly
> expressing her opinion as to the victim's credibility,

> but was rather explaining to the jury why it should believe the victim based on the evidence).

(Doc. 1-2 at 1772–73). The postconviction court then rejected this claim for three reasons. First, it noted that "the reference to [Cook's] occupation as a bondsman is made on rebuttal, after the defense argued that her licenses had been put on hold." (*Id.* at 1773). The court next noted that "the focus of the State's argument is not that [Cook] betrayed the public trust, but to illustrate the unlikeliness of her ignorance of the drug sales occurring in a place at which she was observed to be spending a substantial amount of time." (*Id.*) Therefore, "the statement was not so inflammatory that it might have influenced the jury to reach a more severe verdict than it would have otherwise." (*Id.* (quoting *Spencer v. State*, 645 So. 2d 377, 383 (Fla. 1994) (quotation marks and alterations omitted))). Finally, the postconviction court noted that "there was evidence that [Cook] was a bail bondsman at the time of the offense, and that she was a regular visitor at a house the police had under surveillance for almost a year and at which they conducted 9 controlled buys . . . Consequently, the statement was not improper." (*Id.* at 1774). As to Counsel's failure to move for a mistrial, the postconviction court found that "[a]s the comment complained of in the instant case was not improper, counsel would have had no basis upon which to move for mistrial." (*Id.*) The Sixth DCA affirmed without a written opinion. (*Id.* at 2135).

Cook once again argues that the postconviction court erred under Florida law when it denied this claim. (Doc. 1 at 64–65). She also argues, without evidence, that the prosecutor was using the argument for an "improper purpose" because there "was simply no reason to make this argument except to inflame the passions of the jury." (*Id.* at 65). However, Cook does not support these allegations with anything other than speculation or explain how the inferences drawn by the prosecution from the evidence at trial were unreasonable. *See Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) ("It has long been held that a prosecutor may argue both facts in evidence and reasonable inferences from those facts."). Cook's disagreement with the postconviction court's assessment of the comment's purpose is insufficient to show that the state courts' rejection of this claim constituted an adjudication that was "contrary to, or an incorrect application of," the Supreme Court's holdings in *Strickland*.

Moreover, even if the Court assumes performance error—which it does not—the state court trial judge instructed the jurors on the elements of each crime, explained that it was their responsibility to evaluate the reliability of the witnesses, and told them that they must follow the law as set out in the jury instructions. (Doc. 16-2 at 521–49). This remedied any prejudice from the prosecutor's comments. *See United States v. Jones*, 225 F. App'x 848 (11th Cir. 2007) (noting that the trial court "remedied any prejudice [from the

prosecutor's improper closing argument comments] with jury instructions that counsels' statements and arguments were not in evidence."); *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990) (stating that "[b]ecause statements and arguments of counsel are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered"); *Shriner v. Wainwright*, 715 F.2d 1452, 1459 (11th Cir. 1983) (noting that "with a properly instructed jury, there is nothing to show the jury relied on the prosecutor's remarks").[9]

## 2.    Eight(b)

Cook next argues that Counsel should have objected to the prosecutor's argument that the jury had to determine who to believe.    (Doc. 1 at 65–66). The prosecution argued the following regarding Cook's physical position when the police officers entered the room:

> We are here because Millard and Bernice told you when they saw her in that room, she was on her knees, blankets up past her elbows, in what looked like making a final pushing motion after she had been told to raise her hands multiple times concealing something.    That's why we're here because what is she concealing? She is concealing thousands, thousands of dollars' worth of controlled substances.
>
> Her role is not to sell. Her role was to protect the product that night.    You heard her testimony.    She

---

[9] The Court concludes that these jury instructions also remedied the potential prejudice caused by any of the other statements at issue in Ground Eight.    *See* discussion *infra*.

heard noises, and she was happy when she saw the
police because when you think about it, she didn't
think it was the police.   She thought they were being
robbed.       She's protecting the product for her
boyfriend.

What did she tell you?   She says I slid off the bed with
my back facing the bed.   So either law enforcement is
completely lying or they're telling the truth, and that's
up to you to determine who you believe.

If the target of this operation were the males because
the males were the ones that were selling, they were
the ones that the CIs had sold to that they knew of,
why are they now going to try to frame the defendant?
Why are they going to say ah, let's just make this up?
We're going to pretend like she's concealing things.

Why would they make that up, and why wouldn't if
they were going to make it up say, "We walked in the
bedroom, and in her hands, she's standing like this
with a bunch of drugs."   If you're going to lie about it
and you're going to frame someone, you're going to do
it well.   That's not what we have here.

(Doc. 16-2 at 463–64).   Cook argues that the prosecutor's statement that

"either law enforcement is completely lying or they're telling the truth, and

that's up to you to determine who you believe" improperly shifted the burden

of proof.   (Doc. 1 at 66).

The postconviction court held an evidentiary hearing on this claim.   At

the hearing, Counsel testified that the prosecutor's arguments did not strike

him as something that warranted an objection or rose to the level of asking for

a mistrial.   (Doc. 16-2 at 1907–08).   Counsel also explained that "as a defense

attorney, if you object too much, strategically that could bode negatively . . .

Sometimes, the jury can feel like you're trying to hide something if you keep

objecting to things." (*Id.* at 1907).   The postconviction court denied the claim

as follows:

> Having had the benefit of the testimony at the
> hearing, of the authority and argument provided by
> the parties, and of observing the demeanor of the
> witnesses, this Court finds that counsel credible that
> he had not believed it warranted a motion for mistrial.

(*Id.* at 1950).   The Sixth DCA affirmed without a written opinion.   (*Id.* at

2135).

Cook complains that "the postconviction court did not determine the

comment was proper, but simply found that counsel had no issue with it."

(Doc. 1 at 68).     However, implicit in the state courts' order was a

determination that Counsel made a <u>reasonable</u> strategic decision not to object

to this argument.   In other words, the state courts rejected this claim on

*Strickland*'s performance prong because they determined that Counsel

reasonably believed that repeated objections during closing argument could

make it appear as if Cook had something to hide.   Cook has offered nothing to

show that this determination was "so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." *White*, 572 U.S. at 420.   *See*, *e.g.*, *Bates v.

*Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278 (11th Cir. 2014) (recognizing that

defense lawyers are not required "to make themselves perpetual objection

machines, lest some later reviewing court identify a conceivably plausible objection that counsel failed to raise"); *Chandler v. United States,* 218 F.3d 1305, 1319 (11th Cir. 2000) ("Counsel is not required to present every nonfrivolous defense . . . Considering the realities of the courtroom, more is not always better.").

### 3.    Eight(c)

Third, Cook argues that Counsel was ineffective for failing to object to the prosecution's misstatement of the facts, when she argued that Cook knew that Mr. Hood was trafficking or selling drugs.  (Doc. 1 at 68).  Specifically, she points to the portion of the prosecutor's argument where she attempted to tether the facts presented at trial to the second element of a trafficking charge:

> Element two.   The defendant had knowledge that the structure was to be used for the purpose of trafficking in a controlled substance.   She knew what was going on there.   That's what all of the evidence was.   She knew what she did.   She's been with Lorenzo for – since 2007.   He is a drug dealer.
>
> You heard evidence that back in 2009, there were drugs in their shared bedroom, in their shared dresser during a search warrant, but then today we hear, "I didn't know he was trafficking or he was selling drugs," and he said, "She didn't know that I was selling drugs."

(Doc. 16-2 at 469–70).   Cook raised this claim in her Rule 3.850 Motion, and the postconviction court summarily denied it on the basis that the comment was not improper:

> [Cook] has failed to demonstrate any entitlement to
> relief. To the extent that she generally complains
> that the statement impugns her credibility, this Court
> notes that the credibility of every witness may
> reasonably be called into question. It is the role of the
> "trier of fact to assess the credibility of witnesses, and
> upon evaluating the testimony, rely upon the
> testimony found by it to be worthy of belief and reject
> such testimony found by it to be untrue." *I.R. v. State,*
> 385 So. 2d 686, 687 (Fla. 3d DCA 1980).

(Doc. 16-2 at 1776). The court explained that Florida's standard jury
instructions provides that the jury must:

> properly consider the demeanor of the witness while
> testifying; the frankness of the witness; the
> intelligence of the witness; any interest the witness
> may have in the outcome of the case; the means and
> opportunity the witness had to know about the facts
> about which the witness testified; the ability of the
> witness to remember the matters about which the
> witness testified; and the reasonableness of the
> testimony of the evidence, considered in the light of all
> the evidence in the case . . .

(Doc. 16-2 at 1776 (quoting Fla. Std. Jury Instr. (Civ) 601.2(a)). The
postconviction court further noted that, because the testimony of Cook's
previous arrest had been permitted (over Counsel's objection), "there would
have been no reason for counsel to object at closing." (*Id.* at 1776). The court
concluded that the comment itself was not improper and that Counsel had not
basis on which to object or move for a mistrial. (*Id.* at 1776–77). The Sixth
DCA affirmed without a written opinion. (*Id.* at 2135).

Once again, Cook merely repeats the identical arguments made to the postconviction court and argues that the state courts misapplied state law when they denied this claim.[10]  The state courts have clearly explained what would have happened if Counsel had objected.  The objection would have been overruled.  Counsel is not ineffective for failing to make a meritless objection.  *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise [issues that] clearly lack merit.").

### 4.    Eight(d)

Cook argues that Counsel was ineffective for "failing to object to the prosecutor's characterization of the petitioner as actively involved in the criminal enterprise and being assigned a role to protect the drugs."  (Doc. 1 at 68–69).  Specifically, she argues that Counsel should have objected to the prosecution's argument that she was a principal to trafficking:

> Edricka Cook is a principal to what is going on in that house. She knows they are trafficking drugs out of that, and she's helping them. It is not her role to sell those drugs. Why would they send a very petite female to sell the drugs to people? That's not her role. Her role is to protect the drugs.

---

[10] The basis of this claim is unclear.  To the extent Cook now argues that Counsel should have objected to this comment on the grounds that she actually *did* know about Mr. Hood trafficking in drugs (and that the prosecutor incorrectly argued that she denied it), the Court cannot discern how she can show prejudice from his failure to object.  Reasonable competent counsel could have decided not to object and draw additional attention to Cook's decision to maintain a close relationship with a person she knew to be a drug trafficker.

> Her role is to be what is almost as if the face of the house; the girl that's walking the dog, this is a very normal place. But again, she is part of it. She is helping with it. She is setting it up. She lives next door. People are going -- or she owns the next-door house. People are going back and forth.  She is a main player in this.

(Doc. 16-2 at 468).    Cook argues that this was an inaccurate statement of the facts because she was never observed in a single drug transaction, and the evidence only showed that she "was allegedly hiding the drugs."  (Doc. 1 at 69).   Indeed, the prosecutor agreed that Cook had not been observed selling drugs and suggested that this was why she was charged as a principal to trafficking. (Doc. 16-2 at 16).[11]   The postconviction court denied this claim as follows:

> There was testimony that during the execution of that warrant, law enforcement discovered [Cook] in a bedroom, and observed her kneeling beside a bed with her hands underneath, making pushing motions. She briefly continued to do so even after being directed multiple times by police to stop. A gray plastic shopping bag was later found underneath the bed near where [Cook] had been kneeling, and within the bag were packages of cocaine and heroin.  Additionally, the house in which [Cook] had been found had been under surveillance for about a year, and [Cook] and her boyfriend, Lorenzo Hood, had been consistently observed at that residence during the period of

---

[11] Under Florida's principal statute, "[w]hoever commits any criminal offense against the state . . . or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such[.]" Fla. Stat. § 777.011.

> surveillance. During that time, the police observed
> activity of drug sales and conducted 9 controlled buys
> from that house.  Drug activity was observed to occur
> "all the time day and night," every day.  [Cook] was
> observed in the ten days prior to the search warrant to
> be at the address almost every day. Thus, the comment
> is proper. [Cook] has failed to demonstrate any
> entitlement to relief.

(Doc. 16-2 at 1777–78 (internal citations to record omitted)). The Sixth DCA

affirmed without a written opinion.  (*Id.* at 2135).

Once again, Cook appears to argue that the state courts erred under

Florida law when they determined that the prosecutor's statements were

proper.  And although the postconviction court focused on a different portion

of the closing arguments when denying this claim, the state court's analysis

supports a conclusion that Counsel had no grounds on which to object to the

closing.  Under Florida law, a prosecutor may not "unduly create, arouse and

inflame the sympathy, prejudice and passions of [the] jury to the detriment of

the accused."  *Cardona v. State*, 185 S. 3d 514, 520 (Fla. 2016).  However, a

prosecutor may "review the evidence and . . . explicate those inferences which

may reasonably be drawn from the evidence."  *Merck v. State*, 975 So. 2d 1054,

1061 (Fla. 2007).  Therefore, the courts generally allow wide latitude in

closing arguments by permitting counsel to advance all legitimate arguments

and draw logical inferences from the evidence.  *See Lukehart v. State*, 776

So.2d 906 (Fla. 2000).

When considered in the context of the state's entire closing argument, reasonable competent counsel could conclude that the prosecutor's arguments were not improper appeals to the passions of the jury and that she did not argue facts not in evidence.   Rather, reasonable counsel could conclude that the prosecutor argued that the testimony and other evidence at trial showed that Cook was a <u>principal</u> to her boyfriend's drug-trafficking business and that on the night of her arrest, she attempted to hide Lorenzo Hood's drugs from the police.   Accordingly, the state courts reasonably found that Counsel had no grounds on which to object to the prosecutor's statements.   Moreover, as noted, the state court trial judge instructed the jurors on the elements of each crime and told them that they must follow the law as set out in his jury instructions, which remedied any prejudice from the prosecutor's comments.

Cook satisfied neither prong of *Strickland* on this, or any of the other claims raised in Ground Eight, and she is not entitled to federal habeas relief.

## I.    Ground Nine

Cook asserts that "the cumulative prejudicial effect of counsel's acts and omissions deprived the petitioner of her right to a fair trial and her right to effective assistance of counsel under *Strickland*[.]"   (Doc. 1 at 69–70).   Cook raised this cumulative error claim in her Rule 3.850 Motion, but the postconviction court found it to be without merit because the claim "is dependent upon a finding by [the postconviction court] that trial counsel was

48

ineffective in the claims asserted above, and as [the postconviction court] has not found error in any of the other claims, this claim must fail." (Doc. 16-2 at 1950). Indeed, Cook has not established prejudice as to any individual claim or the collective effect of any deficient performance on the trial. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative error since "none of [Petitioner's] individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate").

In all events, absent Supreme Court precedent applying the cumulative error doctrine to ineffective assistance of counsel claims, the state court's denial of the claim was not contrary to, or an unreasonable application of, clearly established federal law. *See Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009). Therefore, Petitioner is not entitled to federal habeas relief on Ground 9.

## IV. Conclusion

Based on the foregoing, Cook is not entitled to relief on the habeas claims presented here.

Accordingly, it is ordered that:

1.     The 28 U.S.C. § 2254 petition filed by Edricka L. Cook is **DENIED**.

2.     The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Cook, deny any pending motions as moot, terminate any deadlines, and close this case.

## <u>Certificate of Appealability</u>[12]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Upon consideration of the record, the Court declines to issue a COA. Because Cook is not entitled to a COA, she is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on February 5, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

---

[12] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Copies: Edricka L. Cook, counsel of record